Good morning, I'm John Harvey Kraft and I have the honor of being appointed to represent Larry Kelly in this case. I also have the honor of saying there is no plain error question or clear error question. There's a lot of error here. The judge made a mistake, didn't catch that the adult in the juror was still there, let her go back in the jury room. She was there about half an hour. When it suddenly dawns on people that she's there, he brings her out. Defense counsel immediately moves for a mistrial. Doesn't think this can be fixed at all. She was with the jury in deliberations for about 30 minutes. I'll have it spelled out in my brief how exactly it goes. It may have been 34, it may have been 29. But anyhow, she was back there. Help me understand logically how this is different than the situation that the rule expressly allows. You seat the 12 jurors. They begin, let's say they deliberate for two days. Someone has an acute medical condition or passes away. They call in the alternate. The judge says, okay, you've got to start the deliberations all over again. Well, a non-juror participated for two days in discussions, but the rule says that's okay. How is this different? Well, when the soon to become a non-juror was participating, that non-juror was in fact a juror. And that at no time there was anybody in the jury room who was not a juror. The verdict was rendered by, that juror was not part of the jury that rendered the verdict. That's true. But logically, what is the difference? Explain to me why one is bad and the other is okay. I don't get the logic. I don't really love that second. I want the logic here, because it clearly says you can do that. I know it does. And I can't say that in my experience of practicing law that it's always been logical. Well, help me. If you can see some logic, tell us if you can't. What we have in there is the place where somebody is being replaced. And it's clear that the person who was the juror was clearly the juror. At no time was there an alien in the jury room. That's the difference. And logically, what difference does that make? You've had a person who got to express their opinions for two days, who's no longer on the jury, and you tell the jury to start over with a new person, and they do. That's surely that first person influenced the proceedings. Logically, how is that different? I understand your problem with finding a difference in logic. But there is a difference. That's what the law accepts. And I think the only way you can really found it on it, the thing you can found it on, is by saying that there was never anyone who was an alien to the juror who was present in the juror. I know that all of a sudden, the juror who gets excused because she's sick is no longer in the jury and was in the jury before. But when she was in the jury, the jury deliberation room, she was wearing the right cap. And in this case, we have somebody who's wearing the wrong cap who's in there. We also have a problem. Law school was a long time ago. But I seem to remember learning that jurors are incompetent witnesses to impeach their own verdict. So you have a problem here that you can't really go into what the jurors are talking about. And so in this particular case, the woman was there for 30 minutes. There was somebody who testified. She didn't say anything. Silence can be just as communicative as anything. We don't really mess around with what the jurors are doing during the course of the juror deliberation. And there was someone who was a non-juror in that room for 30 minutes. Whether she said nothing or nodded or slept or whatever she did, still her presence affected it. But doesn't that just — isn't that exactly what Judge Jackson tried to do well? He didn't voir dire individually and say, let's see what you talked about. He just said, clean slate instruction, start fresh. Right. And then later on in the motions for detrial, they talked about what had happened in the jury room. But I don't think he can clean that up. So you say it's a per se error in spite of — It's a per se error. But how just — how is that consistent with the comments to 24C? I never knew what the underlying error was in Alano until this case. But it's actually this issue. Yeah, but — But the fact that the first circuit case and the second circuit case in line cite Alano, that means it's not structural per se. That means it's subject to fourth prong. And then they cite — there's a First Circuit case cited, which is a pure harmlessness issue. So that suggests to me that when it gets amended, at that point, we're talking about an error that isn't per se. Well, we have a — we have to see the big distinction between this case and Alano. And the biggest distinction is nobody objected in Alano. It wasn't — Well, what about the First Circuit —  — Houlihan case? What? The Houlihan case cited favorably in the comments. That's a pure — that's a — that's a pure harmlessness. It was objected to. And the First Circuit says harmless. Oh. Alano was the Supreme Court. I know, but the comments approvingly cite that First Circuit decision. That seems hard to reconcile with the statement that it's a per se error. The question is then becomes not whether it — whether there's an actual error that occurs that has to be corrected. It's what cures it. Yes. Or what cures it. And that's when you run into a really hard issue Judge Owen asked about, where if a clean slate instruction works for replacements, why doesn't a clean slate instruction work when you have an alternate that's in there for 30 minutes? I am reminded in this argument of Marcel Ledbetter, Jerry Clower, the great Mississippi storyteller from the 70s. And he told a story about his friend Marcel, who's always getting into trouble. And at one point, Marcel thinks he's chasing a raccoon up a tree and goes up a tree, and he's happy to see Marcel. So Marcel yells down to a friend, shoot the bobcat, shoot the bobcat. And his friend down below says, Marcel, I can't do that. I might shoot you. And he keeps screaming, shoot the bobcat. And finally, Marcel says, shoot up here amongst us. One of us needs to have some relief. And the problem we have here is we don't have a rule from this circuit about whether or not it's reversible, whether or not it can be cured. And this, that's the... You have some guidelines. You have some guidelines. And my position here is that, in this particular case, the defense did what it needed to do to object to the incident, to object to continuation of the trial, and it should have stopped at that. What's the best record site, if one exists, to show that, in fact, discussions did occur, that these alternates, quote, participated or discussed? Is there one? Yes. Hang on. Please. On page 9 of my brief, I make reference to page 838 in the Record of Appeal, the jury four persons say the jury had not yet taken a vote on the verdict while the alternate juror was asked if he was unable to follow the curative instruction, he stated, yeah, but I don't think the alternate juror stated anything anyway. But how does that establish that they did state things if the other person... Well, she could have stood there in absolute silence. It's her presence that has a corruption... Okay. That's your argument, that it was, all the record shows is they were present. You say silence, but the language of the rule as amended says no discussing. It actually contemplates they could go sit there, they just can't discuss. And this Court is going to have to rule on that particular point. So, you know, shoot the bobcat. But I think that Ms. Joplin did a good job of preserving the matter on appeal. It wrote a really great motion for a new trial, and I think the subject is there. It's still an open question in this circuit. Can it be cured? Our position is that, no, it cannot be cured. That you can't ask the jurors how they arrived at a verdict or how they didn't arrive at a verdict. And so the fact that there was a non-juror back there who was never a juror, who was never supposed to be back there deliberating, cannot be cured by an instruction. And with that, I'll save some time for rebuttal. I have a question. Oh, sir. If she was an alien before she left, why can't the jury say what the alien said if it wasn't part of deliberations? The jurors are not really supposed to talk about that. They don't talk about the verdict. They say, did the alien speak or not? That doesn't seem to me to violate, is it Rule 606? That question was asked in the motion. That doesn't seem to be me, is it 606 that bars jurors talking about deliberations? Right. I mean, if she's truly an alien, you can say, did the alien, or did the bailiff speak to me? You're not asking about the verdict. You're just asking. I think you're probably right. I think there probably could be questions that are blank in content as to what goes on with them. And that's, in fact, what Judge Jackson did here when he talked to the jurors. And look at page 838 of the record, and you'll see that reference. And if there are no other questions, I'll save some time for rebuttal. Yes, you've saved time for rebuttal. Thank you. Thank you very much. Mr. Patashkin? May it please the Court, I'm Assistant United States Attorney Adam Patashkin, along with AUSA Patricia Jones. I represent the United States today. The Court should have confidence in this verdict and should affirm because of three main facts on the record. First, the defendant was not prejudiced, and the Court did not abuse its discretion in instruction was given, and under Francis B. Franklin, it's presumed that the jury follows its instructions. Second, the post-verdict questioning of the 12 regular jurors is devoid of any evidence of actual participation or a chilling effect created by the alternate. Third, the alternate was only present in the deliberation room for a mere 34 minutes, and on page 838 of the record, as Mr. Croft stated, one of the jurors wasn't even sure that the alternate ever spoke during that mere 34 minutes. It's also notable convictions have been affirmed in cases in which there was a much greater intrusion upon the 12 regular jurors in the deliberation room. Remind me, is this the case where it took them two hours to come to the verdict? In this case, Your Honor, the 12 regular members of the jury deliberated for 90 minutes post-clean slate instruction, which is almost three times as long as the alternate was present initially during the deliberations. The Acevedo case is an Eleventh Circuit case, but relying on Fifth Circuit precedent. The intrusion in that case, the alternate acted as the foreman to verdict before the alternate was dismissed. The intrusion in this case is clearly factually much less than in Acevedo. I'd also point to the Ramos Fifth Circuit case where the jurors were intimidated by a defense witness who was stalking the regular jurors, and there was still found no prejudice in that case. In this case, a mere 34 minutes of an alternate being present with zero facts on the record to support actual participation in a chilling effect is a much less of an intrusion than was present in Ramos and Acevedo, and for that reason, we believe the courts have confidence in this verdict and there was no prejudice. When you say three reasons, can I ask you questions about the first and the second? The first reason you said is, well, a clean slate instruction was given. Is it the government's position that a clean slate instruction would always cure any presence? So if, for example, it turns out the alternate gets voted to be the foreman, and then the foreman dominates discussion saying guilty, guilty, guilty, then it's discovered, any time the district judge says, hey, listen, start fresh, disregard anything before the jury, they never even need voir dire? Your Honor, it is one of several important factors. Clearly, it's an extremely important one, given the presumption that the jury is going to follow the instructions. I'd also point to pages 817 to 839 of the record, where these specific 12 regular members of the jury all confirmed that they followed the clean slate instruction. Well, that's, to me, that's a very good question, I had the same one. Either clean slate instruction is adequate or not. If it's not, if it's not always adequate, then you are, in every case, looking at who said what when, aren't you? Yes, Your Honor, and So either is a clean slate instruction adequate or not? It should be adequate to cure any error that occurred before the clean slate instruction was given, which is the facts of this case. The post-verdict questioning, again, provides additional support for the fact that there wasn't prejudice. All 12 confirmed they followed the clean slate. All 12 confirmed that the final vote was the vote of only the 12 regular members of the jury. But if you're asking us to rely on the presumption that jurors follow instructions, Judge Jackson did tell them, go in and discuss this case. In Alano, the district court said, don't discuss it to the alternates. So why isn't the government stuck with the presumption that we have to assume the alternates did discuss it? Your Honor, there was the clean slate instruction after that 34 minutes, and again, I'd So that's really what your position reduces to. The clean slate is the cure. It's always a cure. It does cure. It does cure the error. However, in this case, we have much more than that because the post-verdict questioning of the jurors, six of the jurors were asked a question along the lines, was this a vote devoid of any participation of the alternate? And I mean, at page 826, a juror was asked, did you arrive at the verdict without considering any participation of the alternate? Page 829, is this the verdict without any influence or input from the alternate? Page 831, is this the verdict without any influence or participation of the alternate? Multiple jurors were asked that question. The answer was the same. This is the verdict devoid of any What's the government's view of a best practice for a trial court? Literally the text would contemplate the judge could say to alternates, go and sit there quietly. Or should you always keep them in a separate area? Per Rule 24C3, the alternates should be sequestered unless they need to replace a regular member of the juror. Does it read that way? I thought it says retain, but and if you do retain, don't allow them to discuss it. Yeah, the United States would submit the best practices to keep them outside of that deliberation room until they replace a regular juror. In terms of Are you pressing on this record that this is a plain error case or are you not pressing that argument? Your Honor, we believe it is a plain error case. There was That's hard to do, right? Because he did move for a mistrial as soon as he realized it. We believe the error was forfeited in that there was no objection when the juror was sent back into the jury room. Even if there wasn't a forfeiture and the error was looked at under de novo review, the post-verdict questioning of the jurors indicates I'm just surprised the government in this case, unlike the one before, is saying this is a plain error because usually all parties don't really know where the alternates go. They leave that up to the judge. So really, the first time a defense attorney would find out about it is when the bailiff or the marshal says whoops, too many in there, and then right away a motion for a new trial. To me, it would seem like the government did preserve the issue, but you're arguing on appeal that we should find this to be a plain error case. I think in regards to the motion for new trial and mistrial, it's an abuse of discretion standard. But in regards to the original Rule 24C3 error, there was a forfeiture, and ‑‑ Okay. Mr. Craft makes the argument that I think is a reasonable one, that the presence of the alternate, though the alternate is silent, that that silence could have communicative value. We could suppose, for example, a situation in which someone throws out the question, well, does anyone think blah, blah, blah, this is among the jurors, and several of them speak up and you have the alternate there who doesn't speak up, that would be communicating either a message or a negative message that could have influenced the others. And in this case, Judge Smith, the post‑verdict questioning is critical because there's no evidence of the chilling effect you're describing where the alternate influences the decision of the 12 regular members of the jury through potentially nonverbal communication. I would, again, point to the record from pages 817 to 839 where the jurors are asked ‑‑ approximately six jurors are asked the question along the lines of is this the verdict devoid of any influence or participation of the alternate? All responded it was devoid of that influence or participation. But just ‑‑ I mean, your framework of analysis sounds strong to me, but do you do us clean slate instructions enough, but then in the next breath you say questioning was critical, that's not describing a very easy rule for us to write. If we're trying to write for district judges to know when this mistake happens, do we encourage them to question about the participation or what happens, or do we say the best practice is just a clean slate instruction? What's the government's advice? In terms of a best practice once the errors already occurred, Your Honor, the United States would respectfully submit the clean slate absolutely has to be ‑‑ should be given and that is enough to cure the error. On the other hand, as a backup plan, the court should follow the questions in the Allison decision of this court where there is post‑verdict questioning and follow that example as an ideal practice so that when we're in the position we are in today, there's that extra layer of protection for the verdict. If there are no further questions, we will rely on our briefing and submit that the court should have confidence in this verdict. There was significantly less of an intrusion on the regular members of the jurors than there has been in other cases in which there was a lack of prejudice found, and there was a clean slate instruction in this case. For those reasons, the court should affirm the district court's verdict. Thank you. Thank you, Mr. Tashkin. Mr. Kraft, you saved time for a bell. Very briefly, I am suggesting a paradigm of sterility, sort of an operating room type of sterility, and that sterility is violated when the alternate is in there, and that we can't question beyond that. The judge gave the clear ‑‑ he gave the clean slate warning, but how do you do that? Don't think about elephants, okay? And it's going to happen, and it's going to be preserved. The sterility of the jury chambers and of the discretion of the rostrum. Don't think about bobcats. Don't think about bobcats either, right? And so I think that ‑‑ I don't think it can be cured. I think that that's clear, and I think what we see from the other negative examples is there are possibilities where you could waive it. I certainly don't think anything is waived when you don't object when the alternate goes back in, because, quite frankly, no one really knows what goes on. That's up to the bailiff and the court security people who move them around. All kinds of things can happen. We depend on the court security. I read the government's brief initially that it wasn't discovered. Nobody knew it. The lawyers didn't know it until the bailiff reported it to the judge or something. That's not ‑‑ I didn't read the government's brief as an indication that defense counsel knew that the alternate was in there. There's no reason why you pay attention to that. You're too busy gathering your papers up and trying to calm down your client that you wouldn't even know who went back in the jury room. And with that, I'll submit the matter. Thank you very much. Thank you, Mr. Craft. And as you said at the beginning, we noticed that you're court appointed, and we wish to thank you for your willingness to take the appointment and for your good work on behalf of your client. Thank you very much.